UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-14487-CANNON/MCCABE

JOSEPH P. AKOWSKEY,

     Plaintiff,

v.

NATIONSTAR MORTGAGE, LLC, *et al.*,

     Defendants.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court upon Defendants' Joint Motion to Dismiss ("Motion"), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 54; DE 60). After careful consideration of the record, the parties' briefs, and the relevant caselaw, the undersigned respectfully **RECOMMENDS** that the Motion (DE 54) be **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

The Court accepts the following facts as true, taken from Plaintiff's Second Amended Complaint ("Complaint") filed on May 25, 2022 (DE 42).

### A.   Subject Debt

In 2004, Plaintiff and his then-wife purchased a parcel of real estate in Port Saint Lucie, Florida and began construction on a home, financed with a promissory note issued by Bank of America, N.A. ("BoA") (DE 42 ¶ 48). On June 19, 2009, the couple refinanced their loan, resulting in a new debt, secured by a mortgage on the home ("Subject Debt") (DE 42 ¶¶ 49-50). In 2012, the couple defaulted on the Subject Debt by failing to make their monthly mortgage payments (DE

42 ¶ 53).   Thereafter, BoA sold the Subject Debt to Federal National Mortgage Association ("Fannie Mae") but continued to act as the loan servicer (DE 42 ¶ 54).

### B.      Loan Modification

On August 14, 2012, Plaintiff participated in pre-suit mediation with BoA, acting as the loan servicer for Fannie Mae (DE 42 ¶ 58).  Plaintiff reached an agreement with BoA, although his (now) former wife did not attend the mediation or sign the agreement (DE 42 ¶¶ 58-60).  Notwithstanding, in September 2012, BoA sent Plaintiff a proposed trial period plan to modify the Subject Debt in accordance with the agreement reached at mediation (DE 42 ¶ 62).  Plaintiff made all required payments during the trial period (DE 42 ¶ 64).

At the end of the trial period, BoA sent Plaintiff and his former wife a written communication informing them they were approved for a permanent loan modification with a reduced monthly payment and extended loan term ("Loan Modification") (DE 42 ¶¶ 66-67).  Plaintiff signed all paperwork required for the Loan Modification and proceeded to make his new monthly payments (DE 42 ¶¶ 66, 72).  Plaintiff's former wife, however, did not sign any of the paperwork associated with the Loan Modification (DE 42 ¶¶ 66, 73).  Plaintiff paid, and BoA accepted, ten monthly payments pursuant to the Loan Modification (DE 42 ¶¶ 75-76).  In total, including the trial plan payments, BoA accepted thirteen payments in accordance with the Loan Modification terms (DE 42 ¶ 76).

### C.      First Foreclosure Case

On or about December 30, 2013, Nationstar Mortgage, LLC ("Nationstar") became the new loan servicer, taking over the role previously occupied by BoA (DE 42 ¶ 77).  Nationstar refused to honor the terms of the Loan Modification, taking the position that the Loan Modification was invalid because Plaintiff's former wife never signed the paperwork (DE 42 ¶¶ 78, 81).

On November 13, 2014, the law firm of Robertson, Anschutz & Schneid, P.L. ("RAS")[1] filed a foreclosure suit on behalf of Nationstar, acting as the loan servicer for Fannie Mae, against Plaintiff and his former wife in the Circuit Court of the Nineteenth Judicial Circuit in and for Saint Lucie County Florida ("First Foreclosure Case") (DE 42 ¶¶ 88-89).  Plaintiff defended the case by arguing the Subject Debt had been modified because the former loan servicer, BoA, accepted his new, modified monthly payments despite the lack of his former wife's signature (DE 42 ¶ 92).

The state court conducted a non-jury trial in the First Foreclosure Case on November 16, 2016 (DE 42 ¶ 97).  At the conclusion of trial, the court ruled in favor of Plaintiff, orally announcing that "there was an effective modification" of the Subject Debt (DE 42 ¶¶ 102-06; DE 42-4).  The court described the facts of the case as "highly inequitable" and "pretty egregious" (DE 42 ¶¶ 102-06; DE 42-4).  Later, on November 30, 2016, the court entered Final Judgment in Plaintiff's favor ("First Final Judgment") (DE 42 ¶ 106; DE 42-5).  The First Final Judgment provided that Nationstar would "take nothing," but it did not contain any of the detailed oral findings the court made on the record on November 16, 2016 (DE 42-5).  Nationstar did not appeal the First Final Judgment (DE 42 ¶¶ 107-08).

### D.      Second Foreclosure Case

After the First Foreclosure Case, Plaintiff attempted to resume making his modified payments to Nationstar, still acting as the loan servicer for Fannie Mae (DE 42 ¶ 109).  However, Nationstar refused to accept his payments, still claiming the Subject Debt had never been modified because Plaintiff's former wife never signed the paperwork (DE 42 ¶ 109).

---

[1] Defendant Robertson, Anschutz, Schneid, Crane & Partners, PLLC, formerly known as Robertson, Anschutz & Schneid, P.L., will be referred to throughout as "RAS" regardless of the firm's name at the time of the allegation.

On or about January 20, 2017, Fannie Mae sold the Subject Debt to MTGLQ Investors, L.P. ("MTGLQ"), after which, Selene Finance, L.P. ("Selene") took over the role of loan servicer (DE 42 ¶¶ 110-11).  Plaintiff immediately informed MTGLQ and Selene of the First Foreclosure Judgment and that the Subject Debt had been modified, and he began attempting to remit payments pursuant to the terms of the Loan Modification (DE 42 ¶ 112).  However, Selene refused to accept the modified payments, and both MTGLQ and Selene insisted that the Subject Debt had never been modified because Plaintiff's former wife never signed the Loan Modification paperwork (DE 42 ¶¶ 113-14).

On August 17, 2017, RAS – the same law firm that represented Nationstar in the First Foreclosure Case – filed a new lawsuit on behalf of MTGLQ against Plaintiff and his former wife in the Circuit Court of the Nineteenth Judicial Circuit in and for Saint Lucie County Florida ("Second Foreclosure Case") (DE 42 ¶¶ 119-20; DE 42-7).  MTGLQ and Selene continued to prosecute the Second Foreclosure Case until on or about October 10, 2018, when MTGLQ sold the Subject Debt back to Fannie Mae (DE 42 ¶ 131).  Fannie Mae reappointed Nationstar as its agent to service the Subject Debt (DE 42 ¶ 132).  Despite being fully aware of the outcome of the First Foreclosure Case, Nationstar continued to litigate the Second Foreclosure Case, and Nationstar substituted itself as a named party to the case (DE 42 ¶¶ 132-33).  RAS likewise remained as counsel for Nationstar (DE 42 ¶ 134).

The state court conducted a non-jury trial in the Second Foreclosure Case on October 8, 2019 (DE 42 ¶ 137).  Plaintiff argued Nationstar was collaterally estopped from relitigating the Loan Modification because Plaintiff already won that issue in the First Foreclosure Case (DE 42 ¶ 143).  On November 4, 2019, the state court agreed and entered Final Judgment in the Second

Foreclosure Case in Plaintiff's favor with extensive factual findings and legal conclusions ("Second Final Judgment") (DE 42 ¶ 145).  The court ruled:

> The issue of whether [Plaintiff] entered into a loan modification … was fully litigated by the parties to this action in the [First Foreclosure Case] and a final decision was rendered … on the specific modification issue….  After … Final Judgment in the [First Foreclosure Case], [Plaintiff] attempted to send payments to Nationstar, however, [Nationstar] and … [MTGLQ], refused to accept payments from him as they continued to be of the position, despite [the] clear ruling, that there was never a loan modification as [Plaintiff's] wife did not sign the modification agreement; as noted earlier in this order, [Nationstar] made this exact same argument in the [First Foreclosure Case].

(DE 42 ¶¶ 146-49; DE 42-9).  Nationstar did not appeal the Second Final Judgment (DE 42 ¶ 152).

###    E.    Additional Collection Efforts

Even after the entry of the Second Final Judgment, Nationstar, acting at the direction and instruction of Fannie Mae, continued to send Plaintiff written communications seeking to collect the original, unmodified Subject Debt (DE 42 ¶¶ 153-54).  Also, Nationstar and Fannie Mae continued to refuse to accept Plaintiff's modified monthly payments (DE 42 ¶ 157).

###    F.    Instant Suit

In 2021, Plaintiff brought this lawsuit alleging a variety of causes of action against Nationstar, Fannie Mae, RAS, MTGLQ, and Selene (collectively "Defendants").  On May 25, 2022, Plaintiff filed the operative Complaint with the following counts:

| # | Title | Defendants |
|---|---|---|
| I | Violation of Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* | Nationstar<br>Fannie Mae |
| II | Violation of Florida Consumer Collection Practices Act ("FCCPA"), § 559.55, *et seq.*, Fla. Stat. | Nationstar<br>Fannie Mae |
| III | Malicious Prosecution | Nationstar<br>Fannie Mae<br>RAS<br>MTGLQ |

| | | Selene |
|------|------------------------------------------|----------------------|
| IV | Action on the First Final Judgment | Nationstar<br>Fannie Mae |
| V | Action on the Second Final Judgment | Nationstar<br>Fannie Mae |

(DE 42).

This Motion followed (DE 54).

## II.   <u>LEGAL STANDARD</u>

Defendants seek dismissal of the Complaint, arguing Plaintiff fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In evaluating Defendants' Motion, the Court must accept Plaintiff's allegations as true and construe them in the light most favorable to Plaintiff.  *See Pielage v. McConnell, III*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Plaintiff need only provide "a short and plain statement of the claim [to] show that the pleader is entitled to relief," Fed. R. Civ. P. 8, a mere "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## III.   <u>DISCUSSION</u>

### A.   **Count I - Violation of FDCPA**

Count I alleges that Fannie Mae and Nationstar violated the FDCPA, 15 U.S.C. § 1692 *et seq.*  "In enacting the FDCPA, Congress sought 'to eliminate abusive debt collection practices by

debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (quoting 15 U.S.C. § 1692e).  The FDCPA prohibits, among other conduct, a debt collector's use of false or misleading representations and a debt collector's use of unfair collection methods.  *See* 15 U.S.C. §§ 1692e & 1692f.  Fannie Mae and Nationstar raise multiple arguments for dismissal of this count, each of which the Court will address in turn.

### 1.     Failure to State a Claim as to Fannie Mae

Fannie Mae argues Count I should be dismissed because Fannie Mae does not meet the definition of "debt collector" within the meaning of Section 1692a.[2]  The FDCPA applies only to "debt collector[s]," defined as persons who "regularly collect[] or attempt[] to collect" debts owed or due "to another."  15 U.S.C. § 1692a(6).  The FDCPA ordinarily does not apply to creditors trying to collect their own debt.  *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 (11th Cir. 2019); *Deutsche Bank Tr. Co. Ams. v. Garst*, 989 F. Supp. 2d 1194, 1201 (N.D. Ala. 2013) ("[T]he FDCPA does not apply to creditors who seek to collect only what is owed them. It only applies to third party debt collectors.").

Here, the Complaint consistently alleges that Fannie Mae attempted to collect its own debt and not the debt of another, *i.e.*, Fannie Mae purchased the Subject Debt from BoA, and later repurchased the Subject Debt from MTGLQ, and Fannie Mae made efforts to collect the Subject Debt owed to it (DE 42 ¶¶ 54-57, 131).  Thus, as alleged, Fannie Mae did not collect the debt of another.

---

[2] For clarity, the Complaint alleges Count I against Fannie Mae and Nationstar; however, the Motion makes this argument only as to Fannie Mae.

In response, Plaintiff argues that the "false-name exception" applies here.  In limited circumstances, under the false-name exception, a creditor collecting its own debt can be deemed a "debt collector" for purposes of the statute.  Specifically, the FDCPA extends to any creditor "who, in the process of collecting [its] own debts, uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).  This "exception has three components: a creditor must (1) use a name other than its own (2) in a way that would indicate a third person is attempting to collect its debt (3) in the process of collecting its own debt." *Pinson*, 942 F.3d at 1209.  Courts must apply the "least sophisticated consumer" standard when determining whether the false-name exception applies. *Id.*

The Court finds the Complaint fails to allege facts sufficient to satisfy the false name exception.  Instead, the facts allege that Fannie Mae engaged a third-party loan servicer, Nationstar, to service the loan, a duty that necessarily included debt collection activities.  Plaintiff cites to no cases that stand for the proposition that a loan originator subjects itself to the false name exception by engaging a third-party loan servicer to act on its behalf.  Because the Complaint fails to allege facts to show that Fannie Mae acted as a "debt collector" within the meaning of the FDCPA, Count I should be dismissed as to Fannie Mae.

## 2.   Statute of Limitations

Both Fannie Mae and Nationstar argue that the statute of limitations bars Count I.[3]  Under the FDCPA, claims must be brought within one year of the date the violation occurs. *See* 15 U.S.C. § 1692k(d).  Plaintiff filed his initial complaint on December 18, 2021 (DE 1).  Accordingly, the statute of limitations bars claims for violations prior to December 19, 2020.

---

[3] The undersigned has already recommended dismissal of Count I as to Fannie Mae.  The undersigned nevertheless includes Fannie Mae in this discussion for completeness.

Count I alleges multiple violations with the one-year window.  For example, paragraph 198 refers to Exhibit K, a composite that consists of a series of allegedly threatening and misleading communications sent to Plaintiff, all dated within the one-year window (DE 42-11).  Likewise, paragraphs 186 through 197 describe an allegedly threatening and misleading communication dated December 18, 2020, attached as Exhibit J to the Complaint (DE 42-10).  Given the date of this communication, and construing the facts in the light most favorable to Plaintiff, this allegation is timely.  *See Bank of Am., N.A. v. Zaskey*, No. 9:15-CV-81325, 2016 WL 2897410, at *3 (S.D. Fla. May 18, 2016) ("The Eleventh Circuit has held that, where an FDCPA claim is based on a collection letter, the one-year period in 15 U.S.C. § 1692k(d) begins to run on the day after the letter is mailed.") (citing *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995)).  The Motion should be denied on this basis.

### B.    Count II - Violation of FCCPA

Count II alleges that Fannie Mae and Nationstar violated the FCCPA, Section 559.72 *et seq.*, Florida Statutes.  The FCCPA prohibits, among other conduct, the following:

In collecting consumer debts, no person shall:

…

(7)    Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

…

(9)    Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

*See* § 559.72(7) & (9), Fla. Stat.  Fannie Mae and Nationstar raise multiple arguments for dismissal of this count, each of which the Court will address in turn.

### 1.      Failure to State a Subsection (9) Violation

Fannie Mae and Nationstar first urge dismissal for failure to state a claim for violation of Section 559.72(9), Florida Statutes, which makes it unlawful to "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."[4]  To state a claim under subsection (9), a plaintiff must allege facts showing that the defendant had actual knowledge that the debt was not legitimate or that the legal right asserted did not exist.  *See Owens v. Ronald R. Wolf & Assocs., P.L.*, No. 13-61769-CIV, 2013 WL 6085121 at *4 (S.D. Fla. Nov. 19, 2013); *see also Bryant v. Credit Adjustments, Inc.*, No: 10–61009–CIV, 2011 WL 902009, at *3 (S.D. Fla. Mar. 14, 2011) (granting defendant's motion for summary judgment because plaintiff presented no evidence defendant had actual knowledge the debt was illegitimate).

Here, Fannie Mae and Nationstar contend that Plaintiff fails to allege facts to show they had actual knowledge of the illegitimacy of the debt.  The Court disagrees.  As to Nationstar, Plaintiff alleges that Nationstar knew the Subject Debt had been modified (a) because Nationstar was a party to the First Foreclosure Case (DE 42 ¶ 229); (b) because one of Nationstar's representatives was present in the courtroom on November 16, 2016, when the court announced "there was an effective modification" of the Subject Debt (DE 42 ¶ 230; DE 42-4); and (c) because RAS told Nationstar the Subject Debt had been modified (DE 42 ¶ 231).  Likewise, as to Fannie Mae, Plaintiff alleges that Fannie Mae knew the Subject Debt had been modified (a) because

---

[4] For clarity, Count II alleges that Fannie Mae and Nationstar violated subsections (7) and (9) of the FCCPA; however, the Motion raises this argument only as to subsection (9).

Fannie Mae owned the Subject Debt at the time of the First Final Judgment; and (b) because Nationstar, RAS, MTGLQ, and Selene all told Fannie Mae about the modification (DE 42 ¶¶ 232-33).

Plaintiff alleges that Fannie Mae and Nationstar thereafter, and with full knowledge of the Loan Modification, committed the conduct described in Count II, attempting to collect the original, unmodified Subject Debt (DE 42 ¶¶ 213-43).  The Court finds these allegations, if proven, sufficient to show that Fannie Mae and Nationstar acted with actual knowledge that the debt they sought to collect was not legitimate and that the legal rights they asserted did not exist.  The Motion should be denied on this ground.

### 2.    Statute of Limitations

Both Fannie Mae and Nationstar argue that the statute of limitations bars Count II. Violations of the FCCPA must be brought within two years of the date the violation occurs.  *See* § 559.77(4), Fla. Stat.  Plaintiff filed his initial complaint on December 18, 2021 (DE 1). Accordingly, the statute of limitations bars claims for violations prior to December 19, 2019.

Count II alleges multiple violations within the two-year window.  For example, paragraph 199 refers to Exhibit K, a composite that consists of a series of allegedly threatening and misleading written communications sent to Plaintiff, all dated within the two-year window (DE 42-11).  Likewise, paragraphs 186 through 197 describe an allegedly threatening and misleading communication dated December 18, 2020, also within the two-year window, attached as Exhibit J to the Complaint (DE 42-10).  The Motion should be denied on this basis.

### C.      Count III - Malicious Prosecution

All Defendants move to dismiss Count III for malicious prosecution.  To state such a claim,

a plaintiff must allege facts showing the following six elements:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Hall v. Sargeant, III*, No. 18-80748-CIV, 2020 WL 1536435, at *22 (S.D. Fla. Mar. 30, 2020)

(citing *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994)).  Here, Defendants

argue Plaintiff fails to allege facts sufficient to show elements (4) and (5), namely, that the

Defendants lacked probable cause and acted with malice.

"To establish probable cause, it is not necessary to show that the instigator of a lawsuit was

certain of the outcome of the proceeding, but rather that he [or she] had a reasonable belief, based

on facts and circumstances known to him, in the validity of the claim."  *Wright v. Yurko*, 446 So.

2d 1162, 1166 (Fla. 5th DCA 1984) (footnotes omitted).  "In other words, the instigator must have

had a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves

to warrant a cautious man in the belief that the person accused is guilty of the offense with which

he is charged."  *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1124-25 (S.D. Fla. 2019)

(citations and quotation marks omitted).  "As to malice on the part of the defendants, the plaintiff

need not allege actual malice; legal malice is sufficient and may be inferred from, among other

things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the

rights of others."  *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002); *see also Anderson

v. Wal-Mart Stores, Inc*., No. 12-61047-CIV, 2013 WL 773473, at *9 (S.D. Fla. Feb. 28, 2013).

The Defendants raise differing arguments based upon the differing allegations against them.  The Court will therefore address each Defendant in turn.

### 1.    RAS

Because RAS is a law firm, a slightly different standard applies.  When leveled against an attorney, the standard is not whether the attorney had probable cause to file the lawsuit, but whether, following a reasonable investigation of the facts, the attorney had a reasonable and honest belief that the client had a tenable claim.  *See Rivernider v. Meyer*, 174 So. 3d 602, 605 (Fla. 4th DCA 2015); *El Hassan v. Liberty Home Equity Sols., Inc.*, No. 17-22435-CIV, 2018 WL 3134418, at *4 (S.D. Fla. June 26, 2018) ("For a malicious prosecution claim to succeed against an attorney under Florida law, … Plaintiff must meet the heightened standard of lack of probable cause); *Fee, Parker & Lloyd, P.A. v. Sullivan*, 379 So. 2d 412, 414 (Fla. 4th DCA 1980) (holding that if, following a reasonable investigation of the facts, the attorney "has a reasonable, honest belief that [the] client has a tenable claim, [the attorney] enjoys the same freedom of access to the court as does [the] client.  Any more stringent standard would effectively stifle the peaceful resolution of disputes and deny the very justice the courts are intended to administer.").

A recent case, *Melford v. Kahane & Associates*, 371 F. Supp. 3d 1116 (S.D. Fla. 2019), is instructive.  In *Melford*, a husband and wife defaulted on a mortgage and then divorced.  *Id.* at 1121.  Thereafter, the bank entered into a loan modification agreement, under which the husband assumed full responsibility for the loan and the wife was released in full.  *Id.*  The husband later defaulted on the modified loan, causing the bank to file a foreclosure action.  *Id.*  The law firm representing the bank named the wife, even though she had been fully released by way of the loan modification agreement.  *Id.* at 1121-22.  The wife repeatedly advised the law firm that she had

been released from the original debt and requested to be dropped as a defendant, but the law firm continued the suit for a year before finally agreeing to drop her.  *Id.*

The wife later brought a malicious prosecution action against the law firm.  *Id.* at 1120. On the issue of probable cause, the Court entered summary judgment in favor of the wife.  *Id.* at 1124-26.  The Court found that "[the law firm] did not have a reasonable belief that its clients had a tenable claim in the Foreclosure Action," noting that "[t]he Second Loan Modification clearly released Plaintiff from her obligation under the loan."  *Id.* at 1125.  The Court also noted that the wife "notified [law firm] on multiple occasions, dating back to June of 2016, that she was not a proper defendant in the Foreclosure Action."  *Id.*

Here, the Complaint alleges a similar set of facts.  Plaintiff alleges that RAS lawyers were present in the courtroom during the First Foreclosure Case on November 16, 2016, when the court announced, "there was an effective modification" of the Subject Debt and described the facts of the case as "highly inequitable" and "pretty egregious" (DE 42 ¶¶ 102-06; DE 42-4).  This, among other factors, placed RAS on notice that the Subject Debt had been modified (DE 42 ¶¶ 263-71). RAS nevertheless filed the Second Foreclosure Case, once again seeking to enforce the original, unmodified Subject Debt (DE 42 ¶¶ 119-20; DE 42-7).  As in *Melford*, Plaintiff repeatedly advised RAS that the state court had already found the Subject Debt modified in the First Foreclosure Case, but RAS continued to prosecute the case anyway (DE 42 ¶¶ 119-49).

RAS raises two arguments in support of its probable cause.  First, it points out that collateral estoppel is an affirmative defense that must be pled and proven (DE 54 ¶¶ 17-18).  At the time RAS lawyers filed the Second Foreclosure Case, RAS argues, its lawyers could not have predicted with certainty that Plaintiff would avail himself of the collateral estoppel defense.  (DE 54 ¶¶ 17-18).  The Court finds RAS' argument unpersuasive.  Indeed, the same argument could have been

made in *Melford*, where a release barred the malicious claim.  Like collateral estoppel, release is

an affirmative defense that must be pled and proven.  *See* Fed. R. Civ. P. 8(c)(1).  The *Melford*

court nevertheless entered summary judgment in the plaintiff's favor on the issue of probable cause

in that case.

Next, RAS argues it had probable cause to continue the Second Foreclosure Case after the

pleadings closed, because Plaintiff did not plead collateral estoppel in his answer and therefore

waived the defense (DE 54 ¶¶ 17-19).  The Court finds this argument unpersuasive.  The state

court considered and rejected the same argument during the Second Foreclosure Case, ruling:

> [Plaintiff] did plead the affirmative defense of collateral estoppel within his 6th,
> 7th, and 8th affirmative defenses.  [Plaintiff], within his affirmative defenses,
> specifically identified the [First] Foreclosure Action and the issues decided, noting
> the [First] Foreclosure Action involved the same parties and identical Note and
> Mortgage.  There is no question that [Nationstar] was adequately apprised by
> [Plaintiff's] affirmative defenses in this action that he was challenging
> [Nationstar's] attempt to re-litigate the issue of whether a loan modification of the
> [Subject Debt] was reached….

(DE 42-9 ¶ 8).

For all these reasons, the Court finds the Complaint alleges sufficient facts that, if proven,

would show RAS lacked probable cause to bring the Second Foreclosure Case.  Malice can be

inferred from the lack of probable cause.  *See Durkin*, 814 So. 2d at 1248.  This ruling does not

preclude a different result upon more fully developed facts later in the litigation.

### 2.    MTGLQ and Selene

MTGLQ and Selene likewise urge dismissal based on lack of probable cause and malice.

They argue, inter alia, that they were not parties to the First Foreclosure Case, so they were not

present for the state court's oral ruling on November 16, 2016, finding the Subject Debt had been

modified (DE 54 ¶ 68).  As such, they argue the Complaint cannot allege facts to show they had

actual knowledge of the Loan Modification, or lack of probable cause to commence the Second Foreclosure Case, or malice.

The Court disagrees. The Complaint alleges that Plaintiff himself informed MTGLQ and Selene that the Subject Debt had been modified and that Plaintiff even attempted to make payments in the modified amount, all prior to the filing date of the Second Foreclosure Case (DE 42 ¶¶ 110-14). Once the Second Foreclosure Case was filed, Plaintiff once again notified MTGLQ and Selene that the Subject Debt had been modified by way of his affirmative defenses (DE 42 ¶¶ 129-30). Finally, MTGLQ, through its mortgage servicer Selene, hired RAS to handle the Second Foreclosure Case, which was the same law firm that handled the First Foreclosure Case, during which the state court ruled that the Subject Debt had been modified (DE 42 ¶¶ 119-20).

The Complaint alleges that, despite all of this, MTGLQ and Selene authorized the Second Foreclosure Case and continued to litigate the case up to the point that MTGLQ sold the Subject Debt back to Fannie Mae (DE 42 ¶¶ 119-20). The Court finds the Complaint alleges sufficient facts that, if proven, would show MTGLQ and Selene lacked probable cause for the Second Foreclose Case. *See Melford*, 371 F. Supp. 3d at 1124 (finding that defendant lacked probable cause to commence foreclosure case against a released party). Malice can be inferred from the lack of probable cause. *See Durkin*, 814 So. 2d at 1248. The Motion should be denied, although this ruling does not preclude a different result upon more fully developed facts later in the litigation.

### 3.    Fannie Mae and Nationstar

The Court also finds the Complaint alleges sufficient facts, if proven, to show that Fannie Mae and Nationstar lacked probable cause to continue the Second Foreclosure Case after Fannie Mae repurchased the Subject Debt. As to Nationstar, the Complaint alleges that its representatives

were present in the courtroom during the First Foreclosure Case on November 16, 2016, when the state court announced, "there was an effective modification" of the Subject Debt and described the facts of the case as "highly inequitable" and "pretty egregious" (DE 42 ¶¶ 102-06; DE 42-4). This, among other factors, placed Nationstar on notice that the Subject Debt had been modified (DE 42-4; DE 42-8). Likewise, as to Fannie Mae, Plaintiff alleges Fannie Mae knew the Subject Debt had been modified because Fannie Mae owned the Subject Debt at the time of the First Final Judgment (DE 42 ¶ 232), and because Nationstar, RAS, MTGLQ, and Selene all told Fannie Mae about the modification (DE 42 ¶ 233).

The Complaint alleges that, despite this, Fannie Mae and Nationstar nevertheless continued the Second Foreclosure Case after Fannie Mae repurchased the Subject Debt, once again seeking to enforce the original, unmodified debt (DE 42 ¶¶ 112-20). The Complaint alleges sufficient facts that, if proven, would show Fannie Mae and Nationstar lacked probable cause to do so. *See Melford*, 371 F. Supp. 3d at 1124 (finding that defendant lacked probable cause to commence foreclosure case against a released party). Malice can be inferred from the lack of probable cause. *See Durkin*, 814 So. 2d at 1248. This ruling does not preclude a different result upon more fully developed facts later in the litigation.

### D.    The *Merrill* Doctrine as to Counts I-III against Fannie Mae

Fannie Mae also seeks dismissal of Counts I through III under the *Merrill* Doctrine.[5] So named after a 1947 United States Supreme Court decision, "[t]he *Merrill* doctrine requires a showing of actual authority as a basis for holding a federal instrumentality vicariously liable for the acts of its agents." *Faiella v. Fed. Nat'l Mortg. Ass'n*, 928 F.3d 141, 143 (1st Cir. 2019); *see*

---

[5] The undersigned has already recommended dismissal of Count I as to Fannie Mae. The undersigned nevertheless includes Count I in this discussion for completeness.

*also United States v. Killough*, 848 F.2d 1523, 1526 (11th Cir. 1988) ("It is well settled that persons dealing with a governmental agent must take notice of the agent's authority and that any unauthorized acts taken by the agent do not bind the government."); *Coniglio v. Fed. Nat'l Mortg. Ass'n*, No. 18-cv-8045-MSS, 2019 WL 9633294, *2 (M.D. Fla. Sept. 16, 2019) ("Based on *Merrill*, courts have since held that persons dealing with a governmental agent must take notice of the agent's authority and that any unauthorized acts taken by the agent do not bind the government.") (citations and internal quotation marks omitted).

Fannie Mae argues that Plaintiff fails to plead specific, plausible facts to show it authorized its servicer Nationstar to (1) send the communications described in Count I, (2) send the communications described in Count II, or (3) prosecute the Second Foreclosure Case as described in Count III (DE 54 ¶¶ 20-35). The Court disagrees. Viewing the Complaint in a light most favorable to Plaintiff, the Complaint sufficiently alleges that Fannie Mae authorized the acts alleged in Counts I-III, namely, that Fannie Mae knew the Subject Debt had been modified, yet authorized its agents to continue to seek to collect the original, unmodified Subject Debt and prosecute the Second Foreclosure Case.

To begin, the Complaint alleges detailed facts regarding Fannie Mae's Servicing Guide, which describes Fannie Mae's compliance processes and procedures for mortgage servicers and law firms (DE 42 ¶¶ 8-15). Under those procedures, Fannie Mae expressly confers upon such companies the authority to act on its behalf (DE 42 ¶¶ 16, 20). Plaintiff alleges that all of Nationstar's actions described in the Complaint were performed at Fannie Mae's direction via instructions given to Nationstar within the Servicing Guide, as well as express contractual obligations, and loan-level instructions related directly to the Subject Debt (DE 42 ¶ 24).

Though Fannie Mae did not initiate the Second Foreclosure Case, when Fannie Mae repurchased the Subject Debt, Fannie Mae, through its servicer Nationstar, continued to litigate the case, using the same law firm from the First Foreclosure Case (DE 42 ¶¶ 119-20, 131-34). Plaintiff alleges Fannie Mae had actual knowledge of Nationstar's actions because Nationstar and RAS were contractually obligated to inform Fannie Mae of events taking place during the Second Foreclosure Case, including defenses raised by Plaintiff (DE 42 ¶¶ 13-15, 25, 93).  The Complaint specifically alleges that Nationstar reported to Fannie Mae that Plaintiff asserted the modification defense (DE 42 ¶¶ 92-93).  The Complaint likewise alleges that Fannie Mae knew the Subject Debt had been modified because Nationstar, RAS, MTGLQ and Selene all communicated this fact to Fannie Mae (DE 42 ¶¶ 232-33).   Despite this, the Complaint alleges, Fannie Mae directed Nationstar and RAS to prosecute the Second Foreclosure Case anyway (DE 42 ¶ 254).

In addition, Plaintiff alleges that Fannie Mae was involved in the decision to continue to seek to enforce the original, unmodified Subject Debt via collection activities, including sending Plaintiff written communications.  Specifically, Plaintiff alleges that, even after the entry of the Second Final Judgment, Fannie Mae and Nationstar continued to seek to collect the original, unmodified Subject Debt, and continued to do so even after this lawsuit commenced, by sending Plaintiff written communications seeking to collect the original, unmodified Subject Debt (DE 42 ¶¶ 153-54, 183-86, 198; DE 42-11).

The Court finds these allegations, construed in the light most favorable to Plaintiff, sufficient to overcome the *Merrill* Doctrine.  *Cf. Denton v. Nationstar Mortg. LLC*, No. 18-CV-241-GKF-JFJ, 2020 WL 1917486, at *2-4 (N.D. Okla. Apr. 20, 2020) (denying summary judgment on factual issue of whether Nationstar acted with actual authority from Fannie Mae).  This ruling does not preclude a different result upon more fully developed facts later in the litigation.

### E.     Counts IV and V - Enforcement of Judgments

Counts IV and V allege causes of action against Fannie Mae and Nationstar to enforce, respectively, the First Final Judgment and the Second Final Judgment.  Defendants urge dismissal because these two judgments are not money judgments for damages, but defense judgments by which the underlying plaintiff (Nationstar) was ordered to "take nothing" (DE 42-5; DE 42-9).  As such, Defendants argue, "there is nothing to enforce" (DE 54 ¶¶ 71-81).

The Court agrees these judgments cannot be "enforced" in the manner Plaintiff seeks.  In opposition to dismissal, Plaintiff cites to *OMS Collections, Ltd. v. Tien*, 634 F. App'x 750, 754 (11th Cir. 2015), for the proposition that, in Florida, "every judgment gives rise to a common law cause of action to enforce it, called an action on a judgment."  Plaintiff misconstrues this case, however, which involved the holder of a $3.4 million judgment who filed action to renew the judgment in order to extend the limitations period for enforcement.  *See id.* (recognizing that "[a] complaint to renew judgment (also called an action upon judgment) is a Florida common law cause of action").  Such actions are well recognized in Florida.  *See Desert Palace, Inc. v. Wiley*, 145 So. 3d 946, 947 (Fla. 1st DCA 2014) (holder of money judgment filed "action on a judgment" in order to avoid limitations period); *Corzo Trucking Corp. v. West*, 61 So. 3d 1285, 1288 (Fla. 4th DCA 2011) (holder of money judgment filed action to renew judgment in order to extend statute of limitations).

This case, by contrast, involves two defense judgments, not money judgments.  Plaintiff cites no cases standing for the proposition that the holder of a defense judgment has a cause of action to "enforce" that judgment.  As such, the Court finds that Counts IV and V should be dismissed.

## IV.     RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.      The undersigned recommends that (i) Count I against Fannie Mae and (ii) Counts IV and V against Fannie Mae and Nationstar be **DISMISSED WITHOUT PREJUDICE**. Because it may be possible for Plaintiff to plead additional facts to cure the pleading errors discussed here, the undersigned recommends that Plaintiff be granted leave to amend the Complaint.

2.      The undersigned recommends that the Motion be **DENIED** in all other respects.

## V.     NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 5th day of August 2022.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE